# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with ▆▆▆▆▆▆▆.com
that is stored at premises controlled by Google, Inc.

)
)
)
)
)
)

Case No. 20 m 817

*U.S. District Court*
*Eastern District of Wis. ss*
*I hereby certify that this is a*
*true and correct copy of the original*
*now remaining of record in my*
*office.*
**WILLIAM E. CALLAHAN, JR.**
**U.S. Magistrate Judge**
DATED: **1/10/20**
By: **JDH**
**Deputy Clerk**

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711:

See Attachment A

I find that the affidavit(s) or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant ON OR BEFORE *January 24, 2020* (not to exceed 14 days)
☐ in the daytime between 6:00 a.m. and 10:00 p.m.  ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ William E. Callahan _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days (not to exceed 30)  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: *January 10, 2020*
*at 4:05 PM*

Judge's signature

City and State: <u>Milwaukee, Wisconsin</u>

<u>William E. Callahan, U.S. Magistrate Judge</u>
*Printed Name and Title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with ▮▮▮▮▮▮▮▮▮▮

that is stored at premises owned, maintained, controlled, or operated by Google,

Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA

94043.

## ATTACHMENT B

## Particular Things to be Seized

I.    **Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) December 4, 2019, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account from account creation to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative

email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

      c.      The types of service utilized;

      d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

      e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II.    **Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1029(a)(2), 1030(a)(2), and 1030(a)(5), and 1030(b), by individuals associated with Genesis Market, those violations occurring after June 8, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

      (a) Identifying, maintaining, and registering domains and other means of online infrastructure;

      (b) Obtaining, developing, maintaining, and using malicious software;

2

(c) Genesis Market and its associated domains, including the identities of the operators, creators, victims, and associated individuals;

(d) Communication by and among individuals associated with Genesis Market;

(e) Steps taken in furtherance of creating, developing, operating, and maintaining Genesis Market;

(f) Concealing identities of individuals associated with Genesis Market,

(g) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(h) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(i) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(j) The identity of the person(s) who communicated with the user ID about matters relating to Genesis Market and associated domains and activities, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.

3

The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Case 2:20-mj-00817-WEC    Filed 12/23/25    Page 6 of 24    Document 13

U.S. District Court
Eastern District of Wis. } ss
I hereby certify that this is a
true and correct copy of the original
now remaining of record in my
office.
WILLIAM E. CALLAHAN, JR.
U.S. Magistrate Judge
DATED: 1/10/20
By: JDH
Deputy Clerk

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of:       )

Information associated with ▮▮▮▮▮ )
that is stored at premises controlled by Google, Inc.   )
                   )
                   )
                   )

Case No. 20m817

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. §§ 1029(a)(2), 1030(a)(2), and 1030(a)(5), and 1030(b)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: January 10, 2020

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

William E. Callahan, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ▮▮▮▮▮▮▮ being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google, Inc. ("Google") an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1029(a)(2) (trafficking access devices), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), and 1030(b) (conspiracy to commit computer fraud), have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## PROBABLE CAUSE

6.     On or about August 30, 2018, a confidential source of information working for the FBI ("CS")[1], observed an advertisement for illicit online marketplace known as Genesis Market and hosted on the domain genesis.market. The advertisement was in a notorious computer hacking forum. Since August 2018, the FBI has been investigating Genesis Market.

7.     Genesis Market is an online, private marketplace that sells stolen data from malware-infected computers, referred to as "bots." As of January 3, 2020, there are approximately 205,138 bots listed for sale on Genesis Market, each representing one computer device. Genesis Market lists the location of the bots, which span across North America (including in the Eastern District of Wisconsin), Europe, South America, and parts of Asia.

8.     As part of my review of Genesis Market, I observed that the bots are searchable by their physical location. I also observed that all the bots were listed by their device name, which is a unique name assigned by the device manufacturer, unless it is altered by the device owner after purchase. The prices of the bots vary and it appears that the price depends primarily on three factors: (a) the number of

---

[1] CS has been cooperating with U.S. law enforcement since 2017. CS has a prior conviction for a computer related crime. CS is cooperating in exchange for a reduced sentence. CS has provided law enforcement with timely and reliable information that has been corroborated through subsequent recorded conversation and controlled buys. The information provided by CS regarding genesis.market was corroborated by my own investigative actions as discussed herein.

3

online accounts, also called resources, associated with the bot (i.e. accounts with access to Amazon Prime, Netflix, Gmail, etc.); (b) how recently the bot had been compromised; and (c) whether or not there is a fingerprint[2] associated with the bot. I found that if a fingerprint was associated with the bot, Genesis Market provides the purchaser with a proprietary plugin[3] that increases the buyer's control and access to the purchased bot. By utilizing the plugin, the purchaser's ability to masquerade as the bot is exponentially quicker and easier than it would be otherwise.

9.      At the direction of the FBI, CS created a customer account on Genesis Market that CS and agents used to purchase access to bots listed on Genesis Market. On September 19, 2018, CS bought access to ten bots for $300 in bitcoin funded by the FBI. After paying for the bots, CS obtained control of the bots, and

---

[2] A "fingerprint" is a group of identifiers used by third-party applications to identify a computer or device. An example of a fingerprint would be the combination of an IP address, the screen size of the device, the operating system of the device, and the date/time of use for the device. These identifiers, when grouped together, create a "fingerprint" for the device that allows applications and/or websites to confirm that the same device is used for each login. Many businesses' websites rely on "fingerprints" as a fraud detection measure. For instance, in the case of a banking website, if a user attempted to access their online banking account, but the bank's system did not recognize the user's device's fingerprint, the bank's system may prompt the user to enter additional information before permitting access the account. As further discussed in this affidavit, criminals can repurpose legitimate fingerprints to their own devices, which would then allow a criminal to masquerade another device as that of the true account holder.

[3] A plugin is an internet browser extension that extends the functionality of the browser. In the case of genesis.market, the plugin allows genesis.market customers increased usability of the bot by allowing the genesis.market customer to more easily represent their computer as the victim's computer on third party websites.

he/she obtained the usernames and passwords to any account (e.g. Facebook, Amazon Prime) that had been accessed through the bot by the authorized user/victim. Agents reviewed these items purchased and found that Genesis Market worked as was advertised, and that it was in fact collecting and selling personal identifying information on individuals across the world.

10. Since the original purchase, FBI online covert employees have funded the purchases of 69 bots on Genesis Market. Of the 69 bots, 23 have been identified as being in Wisconsin, at least seven of which were within the Eastern District of Wisconsin. As part of the investigation, agents were able to identify and interview seven individuals associated with the purchased bots in the Eastern District of Wisconsin. Agents showed the interviewees usernames and passwords agents obtained through Genesis Market, and the interviewees confirmed that the usernames and passwords belonged to them. The interviewees ranged in age from teenagers (with parents present) to adults.

11. As part of the investigation, in October 2018, agents used open source tools, including DomainTools, to find information on Genesis Market. DomainTools showed that the

DomainTools listed the above SSL

---

[4] SSL certificates are used to provide secure communications between a website and the website visitor. Anyone can see a SSL certificate, which is often represented as a padlock in a browser's address bar. They are commonly used for secure login and/or digital payment purposes.

5

certificate as operated by Starfield Technologies, a subsidiary of GoDaddy.com LLC (GoDaddy), 1455 North Hayden Road Suite 219, Scottsdale, AZ 85260.

12. Thereafter, the FBI obtained information from GoDaddy for the subscriber account referenced above, which showed that the ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ Based on my training and experience, I believe that the user entered fake information during the account creation (typing random keys into the keyboard) to hide the true identity of the individual who registered the SSL certificate.

13. On or around October 1, 2019, agents received information from PayPal Holdings, Inc., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. After reviewing the GoDaddy payment on November 17, 2017, I filtered the data provided to show any additional payments to GoDaddy. Based on the filtering, I found ▮▮▮▮▮▮▮▮▮▮ made two additional payments to GoDaddy. The first was on January 16, 2017, for a one-year .com domain purchase, and the second was on June 24, 2018, for a five-year .org domain renewal. FBI Milwaukee does not yet know the actual domains associated with these two payments to GoDaddy.

6

14.     On or around November 15, 2019, agents received information from

Google regarding █████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████

15.     Based on my training and experience, I believe that the individual who

registered the genesis.market SSL certificate with GoDaddy is the same individual

who operated the email address ██████████████████ I came to this conclusion

based upon the shared use of the name █████████████ as well as the timing of the

account registration and last login, which leads me to believe the account may be a

"burner" account with the sole purpose of maintaining Genesis Market

infrastructure. Although the account was created on June 8, 2016, which is before

known Genesis Market activity was observed by the FBI, I believe, based on my

training and experiences, that the earliest emails, IP logins, and communications

from the account will be the most valuable in identifying the true user of the

account. In my training and experience, when an account is first created, the user

has the lowest level of operational security, as they are most active in setting up

their account, their contacts, linking financial accounts such as a credit card or

PayPal, and phone accounts. Additionally, I believe the account may have been

created with the purpose of "aging the emails," meaning that the user purposefully

created the account earlier than what it was meant to be used for, in this case

7

setting up Genesis Market infrastructure, so that they appeared to be legitimate user and not a burner account. Thus, I believe a search of the account from account creation to present is necessary to identify the true user/operator(s) of these email address.

16. In general, I understand that an email that is sent to a Gmail subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

17. On December 4, 2019, the U.S. Attorney's Office sent a preservation request under 18 U.S.C. § 2703(f) to Google regarding the account

## BACKGROUND CONCERNING EMAIL

18. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved

8

email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

19.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

20.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the

9

account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

21.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

22.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the

10

account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

23.    Based on the forgoing, I request that the Court issue the proposed search warrant.

24.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with █████████████

that is stored at premises owned, maintained, controlled, or operated by Google,

Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA

94043.

# ATTACHMENT B

## Particular Things to be Seized

## I.  Information to be disclosed by Google, Inc. (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) December 4, 2019, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.  The contents of all emails associated with the account from account creation to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative

email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

  c.  The types of service utilized;

  d.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

  e.  All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II. **Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 1029(a)(2), 1030(a)(2), and 1030(a)(5), and 1030(b), by individuals associated with Genesis Market, those violations occurring after June 8, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

  (a) Identifying, maintaining, and registering domains and other means of online infrastructure;

  (b) Obtaining, developing, maintaining, and using malicious software;

2

(c) Genesis Market and its associated domains, including the identities of the operators, creators, victims, and associated individuals;

(d) Communication by and among individuals associated with Genesis Market;

(e) Steps taken in furtherance of creating, developing, operating, and maintaining Genesis Market;

(f) Concealing identities of individuals associated with Genesis Market,

(g) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(h) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(i) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(j) The identity of the person(s) who communicated with the user ID about matters relating to Genesis Market and associated domains and activities, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.

3

The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.